# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLEMENT NJI ACHOA, et al.,** | : | **CIVIL ACTION** |
| Plaintiffs | : | |
| | : | |
| vs. | : | **NO. 17-2715** |
| | : | |
| **BB&T BANK,** | : | |
| Defendant | : | |

## M E M O R A N D U M

**STENGEL, C. J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　**March 26, 2018**

Defendant BB&T Bank removed this action to federal court based on diversity jurisdiction, after Plaintiffs Clement Nji Achoa and Edison Ndikum filed their original complaint in the Court of Common Pleas of Philadelphia County. The plaintiffs allege claims of negligence, assault and battery, false imprisonment, and malicious prosecution against the defendant. The plaintiffs' wives, Clementine Somba and Lobline Ndikum, bring two claims against the defendant for loss of consortium. The defendant has filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to which the plaintiffs responded. For the following reasons, I will grant the motion.

## I.  BACKGROUND[1]

The amended complaint alleges that Mr. Achoa is employed by Gripes Auto Sales which requires him to make frequent bank transactions. On October 28, 2016, Mr. Achoa

---

[1] The facts are gleaned from the amended complaint and the extrinsic documents upon which it is based. See GSC Partners, CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004). For the purposes of this motion, they are presented in the light most favorable to the plaintiffs, as the non-moving parties, and are accepted as true with all reasonable inferences drawn in their favor.

and Mr. Ndikum were at an auto auction in Manheim, Pennsylvania. They left the auction and went to the defendant's branch in Lancaster, Pennsylvania to deposit checks and $12,600 in cash. Mr. Achoa is a customer of the defendant and usually does business at its Lancaster branch. The cashier took the checks and cash and began to process the transaction. The cashier consulted with other staff members, and told Mr. Achoa that he would have to wait for a receipt and for the transaction to be processed. During the wait, Mr. Achoa continually asked what the problem was, and he was repeatedly assured that the computers were down, his transaction was processing, and he and Mr. Ndikum were not to leave the bank. After one hour, the police arrived. There were approximately ten police officers throughout the bank including some guarding the exits. The two plaintiffs were told by the police and bank personnel that they could not leave the premises.

At 2:30 p.m., the two plaintiffs were arrested for allegedly attempting to pass counterfeit United States currency. They were handcuffed in front of everyone in the bank and taken to the police station. The two were placed in separate cells, denied food and water, and were interrogated separately for approximately one hour. Mr. Achoa overheard the police officers joking about two black guys trying to pass off counterfeit money.

At approximately 9:30 p.m., a police officer opened the doors and told the plaintiffs that they were allowed to come out when they were ready. Secret Service agents had come to the bank to check the money, and they determined that the cash was legitimate United States currency. When Mr. Achoa walked out of the cell, a police officer said, "The damn bills were good."

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Following the Supreme Court decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), pleading standards in federal actions have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to allege facts sufficient to show that the plaintiff has a plausible claim for relief. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

While Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . .claim is and the grounds upon which it rests," Bell Atlantic, 550 U.S. 544, the plaintiff must provide "more than labels and conclusions." Byrne v. Cleveland Clinic, 684 F. Supp. 2d 641, 649 (E.D. Pa. 2010)(citing Bell Atlantic, 550 U.S. 544). A facially plausible claim may not be supported by conclusory allegations, but must allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## III. DISCUSSION

### A. Count I -- Negligence

The amended complaint alleges that the defendant breached a duty it owed to the two male plaintiffs as business invitees. Specifically, it alleges that the defendant failed to, *inter alia*: properly train its employees; properly supervise the employees that

3

detained the plaintiffs; draft, implement, and enforce policies that would serve to eliminate the use of illegal detainment; adequately train its work force to recognize counterfeit currency; and properly monitor its employees; properly investigate transactions. The amended complaint also alleges that the defendant was negligent by allowing its employees to profile customers.

To state a claim for negligence in Pennsylvania, a plaintiff must aver that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3) the breach resulted in injury to the plaintiff, and (4) the plaintiff suffered an actual loss or damage. Gabriel v. Giant Eagle, Inc., 124 F. Supp. 3d 550 (W.D. Pa. 2015) (quoting Martin v. Evans, 711 A.2d 458, 461 (Pa. 1998)). The plaintiffs allege that they were business invitees of the bank. The duty owed to business invitees is the highest duty owed to any entrant upon land. Falcone v. Speedway, LLC, 2017 U.S. Dist. LEXIS 7324, *4 (E.D. Pa. 2017). In making out a *prima facie* case, a business invitee must ultimately prove that the landowner had a hand in creating the harmful condition, or that he had actual or constructive notice of such condition. Id. at *5.

The defendant argues that this claim fails for the following reasons: (1) Mr. Ndikum was not a customer of the bank and therefore was not owed a duty, see Fink v. Corporate Liaison, LLC, 2013 U.S. Dist. 57532 (E.D. Pa. 2013); (2) the gist of the action doctrine bars Mr. Achoa's negligence claim because the duty owed to him arises under contract, see eToll, Inc. v. Elias/Savion Adver., 811 A.2d 10, 20-21 (Pa.Super. 2002); and (3) premises liability is inapplicable to the present matter.

A discussion of the merits of the defendant's arguments is unnecessary here because the plaintiffs have failed to allege facts to show any harm or injury stemming from an action of the defendant. The amended complaint, however, does include the following bald allegations, *inter alia*: the defendant created a dangerous condition on its premises; the defendant created a hazardous condition on its premises; the defendant failed to provide a safe and hazard free environment for its invitees, including the plaintiffs and the general public; the actions of the defendant increased the risk of harm to the plaintiffs; and as a direct result of the defendant's actions and/or failure to act, the plaintiffs suffered "multiple injuries, amongst other things, all of which resulted in severe pain and suffering, emotional distress, and mental anguish." To allege that bank employees could create a dangerous or hazardous condition or cause multiple injuries to the plaintiffs by merely double checking the legitimacy of $12,600 in cash, and then contacting the police is more than far-fetched. These bald allegations are insufficient to show that any action of the defendant resulted in injury to the plaintiffs or that the plaintiffs suffered an actual loss or damage. Martin, 711 A.2d at 461.

Accordingly, because I find that the plaintiffs have not alleged facts in support of their entitlement to damages for compensable injury as a result of the defendant's alleged negligence, I will grant the defendant's motion to dismiss Count I.

**B. Count II -- Assault and Battery**

In bringing the claim for assault and battery, the amended complaint alleges that the bank's actions were intended to cause harmful and/or offensive contact with the two male plaintiffs, or an imminent apprehension of such contact, and further that the two

5

plaintiffs were allegedly put in immediate apprehension of such contact. It also alleges that harmful and/or offensive contact with the two plaintiffs, directly or indirectly, resulted from the defendant's actions.

To sustain an action for assault under Pennsylvania law, a plaintiff must "show that a particular defendant intentionally caused an imminent apprehension of a harmful or offensive bodily contact" in the plaintiff. Denithorne v. Ingemie, 2016 U.S. Dist. LEXIS 22236, *6 (E.D. Pa. 2016) (quoting Lakits v. York, 258 F. Supp.2d 401, 407 (E.D. Pa. 2003)). To plead a claim for battery, a plaintiff must "establish that a particular defendant intended to cause a harmful or offensive contact to the plaintiff, or an imminent apprehension of such contact in the plaintiff, and that such contact with the plaintiff resulted." Id. Threatening words are not sufficient to put a person in reasonable apprehension of injury or offensive touching. New Century Bank v. Indus. Blvd., 2016 Pa. Super. Unpub. LEXIS 2875 (Pa.Super. 2016) (quoting Cucinotti v. Ortmann, 159 A.2d 216, 218 (Pa. 1960)). The actor must be able to carry out the threats immediately and must take affirmative action to do so. Id. An assault can be described as "an act intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery." Martin-McFarlane v. City of Phila., 2017 U.S. Dist. LEXIS 177497, *19 (E.D. Pa. 2017) (citing Regan v. Upper Darby Twp., 363 F.App'x 917, 921 (3d Cir. 2010)). In other words, battery is an offensive touching without consent, and assault is an action that makes a victim believe that a battery is about to occur. Id.

Here, the amended complaint is devoid of allegations showing that employees of the defendant touched the plaintiffs or intended to put them in reasonable apprehension of an immediate battery. It merely alleges that employees of the bank told the plaintiffs not to leave the bank. The amended complaint contains no allegation that an employee of the bank actually made physical contact with the plaintiffs, or even threatened them with physical contact. There are no allegations of any affirmative action taken by the employees of the bank to carry out a threat. The allegations it does contain are simply a formulaic recitation of the elements of the causes of action, and they are therefore insufficient to state a claim for assault and battery. Accordingly, I will grant the defendant's motion to dismiss Count II.

### C. Count III – False Imprisonment

The amended complaint alleges that on October 28, 2016, the defendant used its status and power to refuse to allow Mr. Achoa and Mr. Ndikum to leave the bank branch. The bank allegedly refused to return the money or checks, thus making them unable to leave. It further alleges that the bank presented false information to the plaintiffs to prevent them from leaving.

In Pennsylvania, the elements of false imprisonment are: (1) the detention of another person (2) that is unlawful. Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010); see also Renk v. City of Pittsburgh, 641 A.2d 289, 293 Pa. (1994); Fagan v. Pittsburgh Terminal Coal Corporation, 149 A. 159 (Pa. 1930). More specifically, liability for false imprisonment attaches where: (a) one acts intending to confine another within boundaries fixed by the actor, (b) his act results in such a

7

confinement of the other, and (c) the other is conscious of the confinement or is harmed by it. Leckey v. Presbyterian Univ. Hosp., 121 A.3d 1140 (Pa.Super. 2015) (quoting Gagliardi v. Lynn, 285 A.2d 109, 111 n.2 (Pa. 1970)).

Here, there are no allegations in the amended complaint that any employee of the defendant arrested the two plaintiffs, or that the defendant was acting at the direction of the police to arrest them or take them into custody. Further, there is no allegation that a bank employee acted to physically detain either of the two plaintiffs or threatened force to prevent them from leaving the bank. In fact, there is no allegation that either of the male plaintiffs attempted to leave the bank and were refused, physically or otherwise, by a bank employee.

Instead, the amended complaint makes conclusory allegations that the plaintiffs were detained and/or restrained. These allegations are insufficient to state a claim for false imprisonment. Accordingly, I will grant the defendant's motion to dismiss Count III.

**D. Count IV – Malicious Prosecution**

The amended complaint alleges that the defendant instituted criminal proceedings against the two male plaintiffs without probable cause. Those proceedings were allegedly done with malice based upon false information from the defendant, which resulted in the plaintiffs' arrest. It further alleges that the criminal proceedings were terminated in the plaintiffs' favor.

In Pennsylvania, in order to establish a claim for malicious prosecution against a private citizen, a plaintiff must establish that:

8

(1) the defendant instituted criminal proceedings against the plaintiff—meaning that the defendant *knowingly* provided false statements to a law enforcement official or the defendant's desire to have proceedings initiated was the determining factor in the law enforcement official's decision to commence prosecution;

(2) the defendant initiated a criminal proceeding without probable cause;

(3) the defendant acted with actual malice; and

(4) the criminal proceeding terminated in the plaintiff's favor.

Bradley v. General Accident Ins., Co., 778 A.2d 707, 712 (Pa. Super. 2001) (emphasis added); see also Tomaskevitch v. Specialty Records Corp., 717 A.2d 30, 33 (Pa. Cmwlth. Ct. 1998) (citing the Restatement (Second) of Torts § 653, comment g).

Every single element of the test for establishing a *prima facie* case of malicious prosecution is satisfied if a lie was told to law enforcement officials -- if a defendant *intentionally* provided false information to law enforcement officials. Burgos v. Philabundance, 2015 Phila. Ct. Com. Pl. LEXIS 286, *8-9 (Phila.Ct.Com.Pl. 2015). In Pennsylvania, a private person may be held responsible for the initiation of criminal proceedings by a public official: (1) where the person's desire to have the proceeding initiated was the determining factor in the commencement of the prosecution; or (2) the public official acted upon the person's false information. The Restatement (Second) of Torts § 653 -- Malicious Prosecution has been adopted as law in Pennsylvania. Strickland v. University of Scranton, 700 A.2d 979, 984 (Pa. Super. 1997); Cosmas v. Bloomingdales Brothers Inc., 660 A.2d 83, 85 (Pa. Super. 1995). The Pennsylvania

9

Supreme Court has specifically cited to Restatement (Second) of Torts § 653, comment g, which states, in relevant part:

> [I]f . . . the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information. In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.

Jaindl v. Mohr, 661 A.2d 1362, 1364 (Pa. 1995).

Here, other than conclusory allegations that the defendant instituted criminal proceedings that were based on false information, there are no facts to satisfy the first element of a *prima facie* case of malicious prosecution. There is no allegation that the defendant filed a criminal complaint against the two male plaintiffs, pressed charges against them, or directed the police to prosecute them. There is even no allegation that the two plaintiffs were formally charged with a crime. For the plaintiffs to have established that proceedings were initiated against them by the defendant, they would have had to allege that the defendant *intentionally and/or deliberately* made false statements to the police. There are no such allegations. Further, I note that it is alleged that the police determined that the cash was counterfeit after receiving a tip of possible counterfeit money from the defendant's employees. After making that determination, the police, not the defendant, decided to arrest the two plaintiffs. In fact, Secret Service

agents were called to the scene who, using their expertise, determined that the money was legal United States tender.

Moreover, although the information given to the police about potential counterfeit money turned out to be false, there is no allegation that the bank employees *knew* the money was not counterfeit, but told the police a lie just to generate criminal proceedings against the two plaintiffs. The bank employees were carefully performing their function by ensuring that such a large sum of cash about to be deposited in one transaction was legal United States currency. Accordingly, I will grant the defendant's motion to dismiss Count IV alleging malicious prosecution.

### E. Counts V and VI – Loss of Consortium

Finally, the amended complaint alleges that, as a result of the fault and negligence of the defendant, Clementine Somba and Lobline Ndikum suffered in the past and will continue to suffer in the future a loss of marital consortium, including loss of service, society, and comfort of their husbands.

In Pennsylvania, a loss of consortium claim emerges "from the impact of one spouse's physical injuries upon the other spouse's marital privileges and amenities." Pisano v. Extendicare Homes, Inc., 77 A.3d 651, 659 (Pa.Super. 2013). Such a claim is intended to compensate one for "a loss of services, society, and conjugal affection of one's spouse." Polett v. Public Communs., Inc., 2016 Pa. Super. Unpub. LEXIS 1960 (Pa.Super. 2016) (quoting Anchorstar v. Mack Trucks, Inc., 620 A.2d 1120, 1122 (Pa. 1993)). The losses alleged are personal to the uninjured spouse, as opposed to the injured spouse. Anchorstar, 620 A.2d at 1122. The loss of consortium cause of action is a claim

11

derivative in nature and arises from the impact of the spouse's injuries upon the marriage, though the fact that a loss of consortium claim is joined in the same civil action as the spouse's underlying claim does not cause the loss of consortium claim to lose its character as a distinct cause of action.  Id.

Here, the two claims for loss of consortium must fail because the two male plaintiffs cannot maintain their four state law tort claims against the defendant.  Because I have dismissed all four counts alleging tort claims, I must dismiss the two derivative claims for loss of consortium.  Accordingly, I will grant the motion to dismiss Counts V and VI.

An appropriate Order follows.